### ELON G. MARBLE v. THOMAS WHALEY et al.

1. CHANCERY: PARTIES: TRUSTEE, AND CESTUI QUE TRUST, PROPER JOINT COMPLAINANTS.—A party holding the legal title to property for the benefit of another, may confess the trust, and unite with the beneficiaries as co-complainants, in a suit in equity to recover it.

2. SAME: SUPPLEMENTAL BILL ALLOWABLE, AFTER THE ABOLITION OF THE CHANCERY COURT.—When an original bill was filed in the Superior Court of Chancery, before the amendment abolishing that court was inserted in the Constitution, a supplemental bill, making new parties, and also introducing a new subject-matter of litigation, may be allowed after the amendment had been inserted. The original bill being a suit pending when the court was abolished, may be proceeded with in all respects to a final decree, as if the Constitution had not been amended.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

On the 14th of June, A.D. 1855, Thomas Whaley and Girard Stiles, filed their bill, in the Superior Court of Chancery, against Elon G. Marble. The object of the bill was to subject certain slaves of Marble to the payment of a draft drawn by him, in favor of Whaley, on and accepted by Wright, Williams & Co. The draft fell due on the first of January, 1855, and was secured by a deed of trust made by Marble to Stiles as trustee on the slaves referred to; and another draft of the same character, differing in amount and falling due on the first of January, A. D. 1856, was also secured by the deed of trust. On the face of this deed of trust the drafts are fully described, and it is stated that they constitute a debt of Marble's, and that the acceptors accept the bill for Whaley,

and not for Marble.   In the bill it is stated that the draft is really the property of the acceptors, for whom Whaley was agent.   The bill further states, that Marble had failed to pay the draft due in January, 1855; that Stiles had advertised the slaves for sale under the trust, and had demanded possession of them from Marble, who had refused to deliver them, and hence the bill was filed.

From some cause process was not issued on the bill, but in August, 1855, a notice of a motion for the appointment of a receiver was served on Marble in the case, but that motion was not acted upon.

No other steps appear to have been taken in the case, until the 7th of February, A. D. 1856, when the complainant obtained leave to file an amended and supplemental bill, making Wright, Williams & Co., the acceptors and owners of the drafts, co-complainants, and E. D. Downs and Wm. Cox, defendants, and seeking to enforce the payment also of the *second* draft, then past due; the amendment and supplement alleging that Downs and Cox had bought the slaves in controversy, since the filing of the bill, with full notice of complainants' claim.

Process issued on this amendment, &c., and on the original bill, on the 7th of February, A. D. 1856, and was executed on all the defendants on the 9th of the same month.   The bill was, at the ensuing term of the court, taken for confessed, as to Downs and Cox; Marble demurred, on the ground that the Chancery Court had no jurisdiction, by reason of the change in the Constitution, as process issued after the abolition of the court, and the amendment had also been filed subsequent to the destruction of the court; and also on the ground of a misjoinder of parties.   The chancellor overruled his demurrer, and Marble appealed.

*George L. Potter,* for appellant.

On the 14th June, 1855, Whaley and Stiles filed their bill, in the Superior Court of Chancery, against Marble, to recover possession of certain slaves, in order to sell them, under a deed of trust, in which Stiles was trustee.   The deed of trust is made Exhibit E. to the bill, and shows that Stiles could sell only *upon request* of Whaley or his *assignees,* and that Marble was to have possession until sale was required to be made.   This bill was defective in

this : it showed that Whaley had transferred the debt secured by the deed, to Wright, Williams & Co., and thus had *no interest* in the suit; and did not show that those assignees had ever requested the trustee to proceed and sell. There was a misjoinder of complainants, which is a fatal defect. Story Equity Plead. § 509.

No process was issued on this bill, until after the 7th February, 1856, when Whaley and Wright, Williams & Co., and Stiles, filed their amended and supplemental bill, against Marble, Downs, and Cox.

This bill admitted that Whaley had no interest, when the original bill was filed, and never had any under the deed of trust. Wright, Williams & Co. claim all the interest, and now show that another of the trust debts is due ; and aver that Marble has sold the trust slaves to defendants, Downs and Cox. This bill is defective in not stating that Wright, Williams & Co. had requested the trustee to proceed and enforce the deed; it has also the same misjoinder of complainants. Whaley is still a complainant without any interest. Marble demurred, and he appeals from the order disallowing his demurrer. The demurrer should have been sustained and the bill dismissed.

1. For the misjoinder of complainants ; the want of any interest in Whaley. Story Eq. Plead. § 509.

2. The bill was premature. Stiles had no right to sell or take possession of the slaves. It is true, the bill avers that Whaley requested him to sell; but Wright, Williams & Co. then owned the trust-debt, and the request should have come from them. Marble was, by the terms of the deed, entitled to possession until his creditor (the holder of the trust-debt) demanded a sale. If it be said Whaley was their agent and that he requested a sale, the answer is that the bill avers that he, individually, and not Wright, Williams & Co., nor their agent, made the request.

3. The chancery amendment was inserted in the Constitution on the 6th February, 1856, and this amended and supplemental bill was not filed until the 7th February, 1856. It makes new complainants the holders of the debt, and new defendants the holders of the slaves. We do not deny that a suit pending at date of that amendment may be amended by adding new parties, &c., but we insist that a third party cannot borrow the pending

suit, as is attempted here, and thus get into that court, since the constitutional amendment. Wright, Williams & Co., at a time when they could not come in by an original bill, undertake to adopt the suit of Whaley, set him aside, and make it their suit.

*W. C.* and *A. R. Smedes,* for appellees.

The appellants raise two objections to the decree in the court below.

1. That the suit filed by Whaley and Stiles, against Marble, could not be considered "a pending suit," in the language of the amended Constitution, until process had issued in the case, and that that was not done until the law abolishing the court had taken effect.

2. That the filing the amended and supplemental bill, making new parties complainants and defendants, and to procure the payment of a new debt, was a new suit, and not maintainable, even if the original bill were so.

1. It is a sufficient answer to the first objection to say that the bill was filed in the court, and notice of the fact served on the only defendant, and that his answer was prepared to the bill, within a month after the bill was filed. The filing of the bill itself constituted "a pending suit." This has been too often decided to admit of dispute. It stops the Statute of Limitations.

It would be extraordinary if it were otherwise. The issuing of process is not under the control of the complainant. It is the act of the clerk, and he may refuse to do it, until compelled by the court. But a case becomes a suit in court, the very moment the bill is filed.

2. The second objection, though having perhaps more show of reason to support it, is equally untenable. If the original bill constituted a pending suit, and the amendment and supplement were legitimate as such, it was not a new and independent suit, although it made new parties, and an additional subject-matter. The true question is, were the amendment and supplement proper, and would they have been allowed, had there been no change in the jurisdiction of the court? If they were, then the change in the jurisdiction by the terms of the very act creating it, does not alter the state of the case in the least.

Marble *v.* Whaley et al.

That the amendment and supplement were proper and legitimate, it seems to me that no one at all familiar with the principles of chancery practice, can seriously doubt. It took the form of an amendment, because it made Wright and Glover parties both to the original and amended proceedings. Wright and Glover, partners under the style of Wright, Williams, & Co., were the acceptors of both bills and their owners. Whaley, in whom the legal title to the bills was, and in whose favor the deed of trust was made, was the mere agent of Wright, Williams & Co., and as such, would maintain the action on the bills, and enforce their payment, either at law or in equity.

But after the institution of the original bill, in the name of Whaley and Stiles against Marble, Marble's answer is drafted and put on file, and sets up a defence, which makes it important to the success of complainants to take the deposition of Whaley and of Stiles. For that reason, Wright, Williams & Co., the real beneficiaries, were allowed to be made co-complainants. It is always in the power of the chancellor to amend by making new complainants and new defendants, whenever it is requisite to effect the ends of justice.

But admit that Wright and Glover were improperly made co-complainants; the order authorizing it, and the fact, could not affect the validity of the original proceedings, nor of the supplement. It could only touch the propriety of the amendment itself; and that might be stricken out without impairing the efficacy of the bill, or affecting the validity of the entire proceeding. The amendment, though proper, was not indispensable. It might be stricken out, and the case not be shorn of its necessary proportions. But the demurrer does not extend merely to the amendment. It is general, and goes to the whole bill, and must, therefore, be overruled.

The addition took the form of a supplement, because it sought to introduce matter and parties not proper, nor possible to be brought before the court at the inception of the case.

Downs and Cox had purchased the slaves, *pendente lite,* and the second bill, secured by the deed of trust, had matured since the filing of the bill. A supplemental bill was indispensable to bring them before the court; and is matter of daily practice in courts of equity. It is nothing more than the case of a mortgage bill, where only one instalment was due when the bill was filed, and the others

subsequently mature. A supplemental bill is the only way to reach it.

The objections to the proceedings below, not only appear to us untenable and unreasonable, but unworthy of the elaborate refutation we have given them. We have done so, however, out of respect to the counsel who presses these objections in the court below, and has considered them worthy the review of this tribunal.

FISHER, J., delivered the opinion of the Court.

The complainants filed this bill in the Superior Court of Chancery, on the 14th day of June, 1855, for the purpose of obtaining possession of certain slaves, named in a deed of trust executed by the defendant Marble, with a view of having them sold by the trustee, for the payment of one of the bills of exchange secured by the deed. After the constitutional amendment abolishing the Superior Court of Chancery was inserted in the Constitution, a supplemental bill, making Wright, Williams & Co., co-complainants with Whaley, and other parties defendants, was filed. This supplement, in substance, sets forth that Wright, Williams & Co., are in fact the holders of the bills of exchange, although Whaley is the payee, and Wright, Williams & Co., are the acceptors; that both of said bills were then due, and that the drawer was in default in making payment. The supplement, was to have the deed enforced for the benefit of Wright, Williams & Co., as to both bills of exchange.

It is objected that the bill is defective, inasmuch as it is filed by Whaley, the payee, and Wright, Williams & Co., the acceptors of the bills. It is stated that the bills, although payable to Whaley, are in fact the property of the acceptors, Whaley merely being their agent. It can certainly be no objection, that a party holding the legal title to property in trust for another, can confess the trust if so disposed, and unite with parties holding the equitable title in a suit for the benefit of the parties really interested. That is Whaley's attitude here. He holds the legal title, coupled with a trust for his co-complainants. He confesses the trust, and unites with parties holding the equity, to have the money collected and paid over to them instead of to him, Whaley. We can perceive no objection to such a bill.

It is next said, that inasmuch as the supplemental bill made new

parties, and brought into the case a new subject of litigation after the court was abolished, it cannot be maintained. The answer to this position is, that as to causes pending, the court was not abolished, and that amendments and supplemental bills filed in such causes must be treated in every respect as they would have been if the court had not been abolished. As to pending causes, the Superior Court of Chancery was continued with its full jurisdiction; and to know whether the supplemental bill was proper or not, it is only necessary to know the jurisdiction and course of proceeding in the court, before the constitutional amendment was adopted.

Decree affirmed.

